# Richmond

MAUDE MILLER TIMBERLAKE, ET AL. v. STATE-PLANTERS BANK OF COMMERCE AND TRUSTS, ET AL.

June 13, 1960.

Record No. 5085.

Present, All the Justices.

The opinion states the case.

*Joe T. Mizell, Jr.* and *Jesse M. Johnson*, for the plaintiffs in error.

*Thomas A. Williams, Jr.* and *Richard Florance* (*R. Colston Christian; Robert M. Wallace; Herman A. Cooper; A. J. Brent; Christian, Marks, Scott & Spicer; Williams, Williams, Williams & Williams; Layne, Wallace & Carter; Christian, Barton, Parker & Boyd; Florance, Gordon & Brown*, on brief), for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

The question for decision in this case is whether a will duly executed and in existence when the testatrix died had been revoked by a subsequent will, also duly executed, which contained a revocation clause but which had been destroyed and was not in existence at the death of the testatrix. The answer is in the proper interpretation of § 64-59 of the Code,[1] considered in connection with § 64-60.[2]

The testatrix, Kate Miller Levering, made two wills, both executed and attested in accordance with statute, § 64-51, and left them both in the custody of the Trust Department of a Richmond bank, which was named as executor in both. The first will was dated October 29, 1954. The second was dated January 31, 1955, and in the first clause thereof stated that the testatrix makes "this my last Will and Testament, hereby expressly revoking any and all wills and/or codicils by me at any time heretofore made."

Afterwards, on November 20 or 21, 1956, the testatrix went to the bank and made request to withdraw the 1955 will, giving as her reason that she wanted to make some changes in it and expected to do so by a new will rather than by a codicil. This 1955 will was accordingly delivered to her and was never later found. It is consequently presumed that it was destroyed by her with intent to revoke it. *Tate v. Wren*, 185 Va. 773, 784, 40 S. E. 2d 188, 193. An unsigned carbon copy of it was preserved by the bank and exhibited in evidence.

After the death of the testatrix, which occurred on November 1, 1958, the 1954 will was presented to the chancery court and offered for probate by the beneficiaries and the executor named therein, the parties interested were convened and after hearing the evidence the court held, for reasons stated in a written opinion, that the 1954 will was the true last will and testament of Kate Miller Levering, and accordingly ordered it probated and recorded as such. From this order

---

[1] "§ 64-59. Revocation of wills generally.—No will or codicil, or any part thereof, shall be revoked, unless under the preceding section, or by a subsequent will or codicil, or by some writing declaring an intention to revoke the same, executed in the manner in which a will is required to be executed, or by the testator, or some person in his presence and by his direction, cutting, tearing, burning, obliterating, canceling or destroying the same, or the signature thereto, with the intent to revoke."

[2] "§ 64-60. Revival of wills after revocation.—No will or codicil, or any part thereof, which shall be in any manner revoked, shall, after being revoked, be revived otherwise than by the re-execution thereof, or by a codicil executed in the manner hereinbefore required, and then only to the extent to which an intention to revive the same is shown."

the appellants, heirs at law of the deceased, have appealed and contend that the 1954 will was revoked by the 1955 will and that the deceased died intestate. The holding of the chancery court was based on the proposition that a will is ambulatory, speaks only at the death of the maker, and the 1955 will having been destroyed in the lifetime of the testatrix, it never had the effect of revoking the 1954 will. The appellants contend that the revocation clause in the 1955 will became effective immediately upon the execution of that will, was not affected by the destruction of it, and hence the 1954 will was without force or effect.

It will be observed that the statute, § 64-59, provides that a will may be revoked (§ 64-58 declaring revocation by marriage was repealed by Acts 1956, ch. 65) only (1) by a subsequent will or codicil, or (2) by some writing declaring an intention to revoke the same executed as a will is required to be executed, or (3) by mutilating or destroying it with the intent to revoke it.

This statute first appeared in the Code of 1849 as § 8 of Chapter 122, Title 33, in the identical words of the present statute, but its prototype has been in the statute laws almost since the birth of the nation. Section 64-60 appeared as § 9 in Chapter 122 of the 1849 Code.

*Bates* v. *Holman*, 13 Va. (3 Hen. & Munf.) 502, was decided first in 1808 and on a rehearing in 1809. At that time § 3 of Chapter 92, 1 Rev. Code 1803, was in effect, providing that no devise of land "shall be revocable but by the Testator's destroying, cancelling, or obliterating the same, or causing it to be done in his presence, or by a subsequent will, codicil, or declaration in writing made as aforesaid."

In the case named the testator had made a will in 1799 and then in 1803 made another which he signed and under his signature made and signed a postscript stating "I revoke all other wills heretofore made by me." He later cut off his signature to the 1803 will but left the postscript as written and signed. The question was whether the 1799 will was thereby revoked. By a court divided 3 to 2 it was held, opinion by Judge Tucker, that the postscript was separately signed by the testator "as an express statutory revocation of all former wills made by him, utterly independent of, and unconnected with, his second will; and by the maker left in full force, at the time of cancelling that second will, and remaining in full force at the time of his death."

Judges Roane and Lyons dissented. The former contended that the postscript was undoubtedly a part of the will and fell with it. He said:

"If this *postscript* had been contained in the body of the will, and there had been only one signature, it is evident that the cancelling the last will would clear the way for the *first*, which would consequently be established. . . . As to such a clause of revocation, IT also is liable to be revoked; and, being revoked, before the death of the testator, is as if it had never existed. . . . I consider this postscript, therefore, as not an *independent* declaratory act of revocation, . . . but as predicated on the will *then* made, and a part thereof, and liable to stand or fall by that will's being cancelled or suffered to take effect. . . ."

Judge Lyons agreed that if the postscript were still in force "as an independent act of revocation, the will of 1799 was destroyed, and was not a subsisting will;" but he concluded, "I cannot have a *scintilla* of doubt, but that the testator died leaving as his last will the paper [the 1799 will] which has been established as such by the judgment of the District Court."

There seems to have been no disagreement among the five judges that if the postscript was part of the canceled 1803 will, it fell with that will and would not have been effective to revoke the 1799 will.

In *Barksdale* v. *Barksdale*, 39 Va. (12 Leigh) 535, decided in 1842, the question was whether a will of real and personal property duly executed in 1838 was revoked by a writing dated in 1839, intended to be a will but having only one witness and hence invalid. In its opening sentence declaring the instrument to be the maker's will were the words "revoking all other wills" previously made. It was held that the revoking clause could not be abstracted from the will and made to serve as a declaration of revocation under the statute, but that "the invalidity of the instrument, which defeats the new disposition of his property, must also defeat the revocation of the former instrument."

The statute referred to was the revised act of 1819, 1 Rev. Code, Ch. 104, § 9, p. 377, in these words: "No will in writing, or any devise therein, of chattels, shall be revoked by a subsequent will, codicil, or declaration, unless the same be in writing."

Judge Baldwin, for a unanimous court, said:

"There are two modes of written revocation contemplated by the law just quoted, one by a will or codicil in writing, the other by a

declaration in writing. For the sake of distinction, the first may be called a testamentary revocation, and the last a declaratory revocation. . . . The distinction between the two modes of revocation is not formal, but essential. In the testamentary revocation, the testator contemplates a new disposition of his property, and the revocation may be implied from inconsistency . . . or it may be express, in order that the testator may do his new testamentary work without being in any wise fettered by the contents of his former will. The declaratory revocation, on the other hand, is always express, . . . and is in contemplation by the testator of that disposition of his property made by the law governing in cases of intestacy.

"In every testamentary revocation, the testator always acts upon the supposition that his whole purpose will be accomplished, that his entire testamentary act will be effectual, as well in regard to the new disposition of the subject, as the revocation of that which he had made by the former instrument; and his revocation is in fact part and parcel of his new testamentary action. . . . nor can I conceive, when he makes a new disposition of his property, and *eodem flatu* a revocation of a former disposition of it, how he can do so with any other expectation than that both will share the same fate. . . ."

He further said: "Besides, no man, I should think, ever made provision by last will and testament for dying intestate. If such had been the testator's design, he would have torn up the will of 1838 or thrown it into the fire, or if out of his possession and control, would have simply executed a naked instrument of revocation."

*Rudisill* v. *Rodes*, 70 Va. (29 Gratt.) 147, relied on by the appellants as controlling in the present case, did not cite *Barksdale* or discuss the question of revocation, but dealt with the question of revival. There Rudisill made three wills, one each in 1868, 1871 and 1872. The second and third contained clauses revoking all former wills. He destroyed the third will with intent to revoke it, leaving the other two uncancelled. The court said the question was whether by the destruction of the third will the second was revived, and that the solution depended on § 9, Ch. 118 of the Code of 1873, which was in the identical language of present § 64-60, *supra*. Revocation seems to have been assumed or conceded. That the court did not have that question in mind appears from the statement in the opinion that it was not aware that § 9, the revival section with which it was dealing, had ever been construed by this court, and that there was no reported case about it. It was held, however, that there was no

error in the judgment of the circuit court that the 1871 will had been revoked by the 1872 will, was not revived by the destruction of the latter, and therefore was not entitled to probate.

In *Bell* v. *Timmins*, 190 Va. 648, 58 S. E. 2d 55, the chancery court probated the holographic will of the testatrix, dated in 1935, after deleting interlineations made· by a Miss O'Brien. In refusing an appeal we adopted and published the opinion of the chancellor as the opinion of this court. In that case Miss O'Brien testified that there was in existence a subsequent will, holographic and signed, which started out with a revocation clause, followed by a disposition of identical purport and effect as the will which was probated. The court was asked by the contestant "to rip this introductory clause of the supposed subsequent will out of its setting, and use it to cancel this 1935 will; but without going further and undertaking to set up, here or elsewhere, the whole of the subsequent will." In rejecting this request the court applied the doctrine of dependent relative revocation, which it explained, and then stated:

". . . The law takes the view that if the testator is not able to carry out his whole testamentary intent in making the new will, or in making changes in the old one, then it is to be presumed that he prefers his old will to intestacy; that the revocation was conditioned upon the new testamentary disposition being effective."

The court added that the doctrine is nowhere more clearly recognized than in *Barksdale* v. *Barksdale, supra,* which is quoted from at length in the opinion.

In *Poindexter* v. *Jones*, 200 Va. 372, 106 S. E. 2d 144, the testatrix had made two holographic wills, one dated in 1938 and the other in 1939. Later she made two other holographic wills, one dated in 1947 and the other in 1950, which impliedly revoked the 1938 and 1939 wills but which she subsequently canceled with intent to revoke by tearing off her signature. The question was whether the 1938 and 1939 wills were revoked by the 1947 and 1950 wills when either or both of the latter were executed. Neither of the latter wills contained a revoking clause or declared an intent to revoke the earlier wills, but they were wholly inconsistent with the earlier wills and if unrevoked would have supplanted them.

There, as here, the heirs of the testatrix relied upon the *Rudisill* case, *supra,* to support their contention that the 1938 and 1939 wills were immediately revoked on the execution of the subsequent wills and that the testatrix died intestate. But we referred to the fact

that in the *Rudisill* case the court dealt with the revival statute (§ 64-60), did not refer to the *Barksdale* case, "of persuasive effect," and did not comment on what is now § 64-59, the revocation statute, which was equally pertinent "because unless the subsequent will *revoked* the former when executed, the issue of whether or not there is a revival is never reached."

We then proceeded, after discussing the *Barksdale* case, to hold that where there are two inconsistent wills and one has been destroyed by the maker, "no conflict arises or can arise between the two instruments, for wills are ambulatory and operate only upon and by reason of death." Consequently, we said, the 1938 and 1939 wills must be probated because they were not revoked by the 1947 and 1950 wills "as there can, in fact, be no conflict between these *ambulatory instruments—these wills—until death,* and as the latter were destroyed *animus revocandi,* they thus never constituted wills under § 64-59, and never revoked the 1938 and 1939 wills." We expressly overruled so much of the opinion in *Clark* v. *Hugo,* 130 Va. 99, 107 S. E. 730, as was in conflict with this holding.

Under § 64-59, so far as we are presently concerned, a will is revoked (1) by a subsequent will or codicil, or (2) by some writing declaring an intention to revoke, executed in the same manner as a will. The first way is a testamentary revocation, the second is a declaratory revocation. The distinction is not formal but essential. The testamentary revocation is made to clear the way for a new disposition of testator's property; the declaratory revocation does not dispose of property but renders the maker intestate. The testamentary revocation would not occur unless the testator intended to change his previous will. The testamentary revocation is thus part and parcel of his new testamentary action. When he destroys the revoking will, how can he do so with any other expectation or belief than that he is destroying it all, the revoking provision along with the disposing provisions, both imbedded in the same document? *Barksdale* v. *Barksdale, supra.*

Here we know that Mrs. Levering did not intend to die intestate. The evidence shows it and the chancellor found it to be true. At the bank she asked only for the 1955 will and left the 1954 will intact in the bank where she had placed it. She intended to make some changes in the 1955 will. Instead of doing so she destroyed that will. Then how could we know that she then meant or thought that the revocation would remain effective although she knew the

dispositions of her property in the instrument of which it was a part would not be?

In *Poindexter* we spoke of the paradoxical situation of a testator's dying intestate with an intact will in his hand. As the chancellor said in his opinion in the present case, this testatrix left her will in a better and safer place than if she had died with it in her hand. She died "with a valid, unblemished will in the custody of the executor named therein, upon whose integrity and good faith to propound that will for probate and to carry out its testamentary provisions she had a right to rely."

A will is an ambulatory instrument, not intended or allowed to take effect until the death of the maker. It may be changed during life as often as the mind and purpose of the testator change. While he lives his written will has no life or force, and is not operative or effective for any purpose. 95 C.J.S., Wills, § 310, p. 110; *Spinks* v. *Rice*, 187 Va. 730, 47 S. E. 2d 424. If a testator elects to use the first method provided by the statute and puts a revocation provision in a will which he knows he may change at pleasure and which he knows will not be effective until he dies, it would seem to be wholly illogical to say that if he afterwards destroyed the will with intent to revoke it, he did not thereby destroy all of it, but that, regardless of his intention, the revocation clause, although without physical form or existence, remained alive and vital with power to destroy all the wills he had ever written. Under such a rule the most solemn and deliberate will of a testator may be refused probate on the testimony of a witness, as in *Bell* v. *Timmins, supra,* that he saw the testator write and sign a later will which revoked the will now proffered.

We specifically held in *Barksdale* that a revoking clause in a will is a part and parcel of the will itself, without independent and immediate life or power, and that it survives or perishes with the will. We specifically held in *Poindexter* that a will which revokes a prior will by being wholly inconsistent with it, does not effect such revocation when executed but may do so only if it subsists when the testator dies. We are unwilling now to turn from the reasoning or the result of those two cases.

Our conclusion is that *Barksdale* and *Poindexter* announced the safer and better rule, a rule that keeps in step with the historic character and function of wills and is consonant with the language of the statute; that is, when a revocation of a prior will is made under the statute, § 64-59, by a subsequent will, the revocation clause

speaks when the will speaks, not at the time of the execution of the will, but at the death of the testator; and if in the testator's lifetime he destroys or cancels the revoking will with the intent to revoke it, the revocation provision falls with the will and is not effective to revoke the prior will. So far as *Rudisill* v. *Rodes, supra,* 70 Va. (29 Gratt.) 147, is in conflict with this conclusion, it is overruled.

The judgment of the court below establishing and probating the 1954 will is

*Affirmed.*

SPRATLEY and I'ANSON, JJ., dissenting.

SPRATLEY, J., dissenting:

I find myself unable to agree with the opinion of the majority. I think it contrary to the plain provisions of the statutes involved, and to the principles and precepts of *Rudisill* v. *Rodes,* (1877) 70 Va. (29 Gratt.) 147, which have been accepted and approved by eminent jurists, lawyers, legal writers and many courts.* The result of the majority opinion is to reverse the decision in the *Rudisill* case, *supra,* decided eighty years ago, after the adoption of provisions in Code of 1849, which have remained unchanged to this day.

Here we have a second will dated January 31, 1955, duly executed, wherein testatrix expressly declaring her intention to revoke all former wills by her made. It is clear that she did not intend her former will dated October 29, 1954, to stand, both by that declared intention and by her different property disposals in the two instruments. The execution of the second will was the last testamentary act of the testatrix. Thereafter, she told a friend that she intended to execute a new will, and on some unnamed date she presumptively destroyed the second instrument. She did not later make a new will, undertake to revise, or to re-execute either of the two wills she had made, in any of the methods provided by statute.

The facts present the question: Did the destruction of the second will destroy the declared intent of the testatrix therein to revoke her

---

* See Volume 1, University of Richmond Law Notes, No. 3, page 147, *et seq.,* "Revocation and Revival of Wills in Virginia," by James H. Barnett, Jr.; and cf. Note, "Revocation of Wills by Subsequent Instrument," 46 Virginia Law Review, No. 2, pages 373, *et seq.*

first will and thereby leave alive and vital the first will as her true last will and testament?

Code, §§ 64-59 and 64-60 are so intermingled that it is necessary to give consideration to each of them and to their historical background.

The prototype of Code § 64-59 has been on the statute books of Virginia almost since the birth of the State. Code § 64-60 first appeared as section 9, Chapter 122, Code of 1849, and next as section 9, Chapter 118, Code of 1873.

Prior to the general revisal of the laws of this State in 1849, it was generally held in the common law courts that the destruction, animo revocandi, of a will containing a revocatory clause, a former preserved uncancelled will was thereby revived, and no proof to the contrary was allowed. In the ecclesiastical courts, the revival or restoration of the former will was made to depend on the intention of the testator and parol evidence was admissible to show the intention. *Rudisill* v. *Rodes, supra.* 70 Va. 149.

In the *Rudisill* case, *supra*, decided after the enactment of statutes identical with Code §§ 64-59 and 64-60, the testator had executed three wills, the second and third containing clauses revoking former wills, and destroyed the last will with the intent to revoke it. The court held that the second will, though retained uncancelled by the testator, "had been revoked by the subsequent will of said decedent * * * and was not revived by the destruction, animo revocandi, of the last named will;". 70 Va., *supra*, 152.

In that case the court cited *Bates* v. *Holman*, (1809) 13 Va. (3 Hen. & M.) 502, and in referring to the difference between the rule in the common law and ecclesiastical courts, said:

"The effect of the rule in the law courts was to exclude arbitrarily all extrinsic evidence of intention upon the question of revival, and thus oftentimes to set up a will contrary to the intention of the testator; while the rule in the ecclesiastical courts threw the door wide open to the admission of such evidence, and suffered the intention of the testator to be determined by 'the uncertain testimony of slippery memory.'

"It was the object of the English statute by the 22nd section, (from which § 9 of Chapter 122, Code of 1849, now § 64-60, Code 1950, was taken) to abrogate both of these rules, which were attended with the mischiefs just indicated, and to establish in their stead a safer rule, by which the intention of the testator would be manifested

with more certainty, and be less liable to be defeated by acts and circumstances of an equivocal character."

Cited in support is an English case where testatrix executed a will, and subsequently two other wills, each containing a clause revoking all former wills, and later destroyed the last two wills, where it was held that the first will was revoked by the last two wills and was not revived by the destruction of the two wills.

In *Bates* v. *Holman, supra,* a testator made two wills at different times. He added a postscript to the second will, by which he "revoked all former wills" and signed the postscript. He cancelled the second will by cutting his name from the body of it; but left the signed postscript intact. The first will was preserved by the testator. The court held the signed holographic postscript to be a separate and independent instrument unconnected with the second will and operated to revoke the first will. There were vigorous dissents by two judges who considered the postscript to be a part of the will, and that it died when the second will was destroyed.

It will be here observed that there was no revocation of the revoking instrument as in the case before us, and it can hardly be said that the holding there supports the theory that the destruction of a revoking instrument leaves alive a former preserved uncancelled instrument.

In *Barksdale* v. *Barksdale,* (1842) 39 Va. (12 Leigh) 535, also decided before the 1849 Code, there was a second writing intended by the testator to be his last will. It contained a clause revoking all other wills. It was attested by only one witness, whereas wills disposing of property had to be witnessed at that time by two persons. It was held that the second writing not having been executed properly as a will was invalid and inoperative, and not being effective as a testamentary disposition, it was not effective as a revocation of the first will. In that case there was no second will and consequently no question of the effect of revoking a subsequent instrument.

The case of *Spinks* v. *Rice,* (1948) 187 Va. 730, 47 S. E. 2d 424, is not in point here. In that case there was no second will. There was a second instrument which contained no revocation clause, but the instrument was not executed in the manner required by law and the maker thereof never destroyed it.

In *Bell* v. *Timmins,* 190 Va. 648, 58 S. E. 2d 55, the court held that a second instrument had not been established as a last will and that the evidence was insufficient to establish such a will, and relying upon

the *Barksdale* case, *supra,* permitted the first will to stand. In addition, in discussing a theoretical problem, it was held that in order for the revocation to be effective, it was necessary to be shown that the revocation contemplated by the testator was "not a subsidiary conditional exercise of power," but an independent subsequent substantive act without reference to the character of the instrument employed.

In *Poindexter* v. *Jones,* (1958) 200 Va. 372, 106 S. E. 2d 144, it is sufficient to say that neither of the last two of four wills made by the testatrix contained a revoking clause, "nor did either declare an intention to revoke any previous wills." In distinguishing the *Rudisill* case, *supra,* Mr. Justice Miller pointed out that the will in the *Rudisill* case "contained a revoking clause; it was a writing 'declaring an intention to revoke * * *.' " 200 Va., *supra,* page 380.

In *Hugo* v. *Clark,* (1919) 125 Va. 126, 99 S. E. 521, there was evidence that the testator had duly executed a second will containing an express revocation clause, but the will could not be found. The court held that evidence of its existence should have been admitted in the trial court. On the merits, the decision was based on the principles of the *Rudisill* case, *supra,* 125 Va., page 126. Upon the rehearing of that case, *Clark* v. *Hugo,* (1921) 130 Va. 99, 107 S. E. 730, the court in extending the rule in the *Rudisill* case, *supra,* said: "The legal rules and purposes which must control are decisive and clear. A will is revoked by a subsequent inconsistent will; and after such revocation the destruction of the latter will does not have the effect of reviving the former, even though the testator so intends. Code 1919, § 254, *Rudisill* v. *Rodes,* 29 Gratt., (70 Va.) 147."

It is everywhere recognized that the purpose of the law of wills is to give effect to the last valid testamentary act of the testator. That is true when a testator makes a will and subsequently executes a second valid will, whether the two wills are or are not reconcilable; and I submit that it ought also be true where a testator duly executes a subsequent will declaring an intention to revoke a former will, and then destroys the latter writing.

As Mr. Justice Eggleston, now Chief Justice, said in *In Re Will of Bentley,* (1940) 175 Va. 456, 462, 463, 9 S. E. 2d 308, 311, where there were two inconsistent wills executed on different dates.

"It is true that both instruments cannot stand. But *the first will is revoked by the act* of the testator *in executing a subsequent will,* and not by the judgment of the court in admitting the later will to

probate. The result flows not from any proceeding attacking the probate of the first will, but from the law which gives vitality and force to the last testamentary act of the testator." 175 Va., pages 462 and 463. (Emphasis added.)

If the foregoing statement of Justice Eggleston be said to be *dictum*, "it was the *dictum* of a distinguished judge, concurred in by the entire court, and is entitled to much respect." *Kent* v. *Kent*, 106 Va. 199, 204, 55 S. E. 564, 566, and *Adams* v. *Cowan*, (1933) 160 Va. 1, 168 S. E. 750.

In *Adams* v. *Cowan, supra*, 160 Va., the testatrix made two wills. In the first she left the residue of her property to her nephew. In the second she left the residue "to go to the relief of the poor * * *." Both wills were probated. In a suit for the construction of the two wills it was held that the residuary gift in the second will revoked the residuary gift in the first will, and this resulted in the testatrix dying intestate as to the residue in the second will. Thus, apparently, the court rejected the principle in the *Barksdale* case, *supra* (39 Va. 535, 542) with respect to the presumption that "no man * * * has made provision * * * for dying intestate."

In summary, it should be borne in mind that in the *Bates* case, *supra*, there was a subsequent inconsistent will which was cancelled by the testator, and that there was a duly signed postscript to that will which revoked all former wills, but there was no revocation of the postscript. In the *Barksdale* case, *supra*, there was no valid second will, and consequently no question of revocation involved. In the *Bell* case, *supra*, the making of the second will was not established, and consequently there was no question involving the revocation of the first will. The *Bates* and *Barksdale* cases, *supra*, were decided before the revision of the Code in 1849. Moreover, since in the *Bates* case there was no revocation of the revoking instrument, it cannot be said to support the view that the revocation of a revoking instrument restores a revoked instrument.

In the case before us the trial court gave no consideration to § 64-60, which section was expressly held in the *Rudisill* case, *supra*, to have changed the rules of law in effect prior to the revisal of the general laws in force before 1849.

The provisions of § 64-59 and § 64-60 are simple, clear, and positive. Section 64-59 provides how a will may be revoked. Section 64-60 provides how and when a will "in any manner revoked" may be revived. The latter section eliminates any distinction between

the effect of a testamentary act of revocation and a separate and independent act.

In § 64-59 no difference is made between a will, or a codicil, or a writing, containing a revocation clause, as to the time when such a clause and either type of instrument becomes effective; and there is no indication that the legislature intended to make a difference. There is no provision that the revocation of a prior will is conditioned upon the existence of a subsequent will containing a revocation clause at the death of the testator, or that the second will be admitted to probate in order that its revocation clause can be made effective. If that condition had been provided, a revival statute such as § 64-60 would be useless because the potential survivor, himself, would be past reviving. The act declaring the intention to revoke is the essence and heart of the revocation process, an act which has immediate effect at the time of commission. *In Re Will of Bentley, supra,* 175 Va.

Moreover, § 64-60, in the employment of the language "in any manner revoked" encompasses all types of revocation in writing, whether by testamentary act or by a separate and independent instrument, duly executed.

A will being ambulatory in its provisions from its very nature constitutes a recognition that a testator may revoke any of its provisions, make a new instrument with new dispositions, or re-execute or republish a former will, in accordance with statutory requirements.

Code, § 64-62 has no application, as I see it, to the question involved in this case. It deals "with reference to the real and personal estate comprised" in a will.

It is all very nice to say that the testatrix here could have destroyed her first will, and that since she did not do so that will remained alive and vital. That she desired the first will to remain alive is contrary to the evidence as declared by her in the execution of the second will, and by her statement that she intended to make a third will. She changed her mind when she made the second will, she changed her mind when she destroyed the second will, and we have no means of knowing whether she subsequently changed her mind again, preferring that her property be disposed of according to the laws of intestacy. May it not be as well presumed that in destroying the subsequent will and in failing to make a new will she elected to die intestate? The intentions of the testatrix with respect to disposal of her property are as ambulatory as are the pro-

visions of a will. I am not inclined to believe that she had any knowledge of the doctrine of dependent relative revocation.

I would reverse the judgment of the trial court and hold that the testatrix revoked her first will on January 31, 1955, when she so declared her intention in her second will. The first will thus became null and void, and there has been no life breathed into it by a revival thereof under the provisions of § 64-60.

Any doubts as to the wisdom of the rules enacted by statute, and adopted in the *Rudisill* case, *supra*, are questions for the legislature to resolve.

I'ANSON, J., concurs in this dissent.