## CIRCUIT COURT OF FAIRFAX COUNTY

Syed Ahmad Shakeel

v.

Tahira Khanam

June 23, 2003

Case No. (Chancery) 180250

BY JUDGE ROBERT W. WOOLDRIDGE, JR.

This matter came before the Court on May 30, 2003, on Syed Ahmad Shakeel's Petition to Admit a will to Probate. Petitioner offers an instrument styled as a "Durable Power of Attorney" as the purported will of Wakil Ahmad Khan and asks the Court to admit the instrument as such. Defendant Tahira Khanam was served by publication and has not answered. I heard argument from Petitioner's Counsel on May 30, 2003, at which time I took the matter under advisement. Having considered the oral and written arguments before me and the relevant statutes and case law, I find that the proffered power of attorney cannot be admitted to probate as the will of Wakil Ahmad Khan.

The facts of this case, as set forth in the Petition, are as follows. Aqeel Ahmad Khan, age 58, died intestate in Fairfax County in July 1996 as a result of an automobile accident. At that time, Aqeel Khan, a Fairfax County resident, owned real property in Virginia. He was not married, had no children or surviving siblings, and his Mother was deceased. His sole surviving heir was his father Wakil Ahmad Khan, a resident of India. Petitioner Syed

Shakeel qualified as the Administrator of Aqeel Khan's estate in September 1996.

On November 4, 1996, Wakil Khan executed a durable power of attorney in which he gave Petitioner Syed Shakeel and Mohammad Haseeb Rizvi power and authority, jointly and singly, to take possession of Wakil Khan's inheritance from his son Aqeel Khan and distribute the proceeds from the sale of Aqeel Khan's real property to persons and organizations in their discretion.

The Power of Attorney appointed Syed Ahmed Shakeel and Mohammad Haseeb Rizvi as Wakil Khan's attorneys in fact to:

> grant, bargain, sell, convey, or contract for the sale of the following described property owned by me as the sole heir at law of my deceased son, Aqeel Ahmad Khan: 6115 Brandon Avenue, Springfield, Virginia 22150; said attorneys in fact are authorized to grant, bargain, convey, sell or to contract for the sale and conveyance of any and all of the said property to any person for such price or prices, and on such terms and conditions, as said attorneys in fact may deem proper, and in my name to make execute, acknowledge, and deliver a good and sufficient deed or deeds of conveyance, or other such instrument or instruments, necessary to effect such sale, conveyance, or agreement.

The Power of Attorney further authorized the attorneys in fact to "pay, disburse, give, and distribute the monies and properties received from the estate of Aqeel Ahmad Khan and the proceeds of the sale of 6115 Brandon Avenue, Springfield, Virginia 22150, to persons and organizations in said attorneys' discretion."

The power of attorney is signed, attested to by two witnesses, and notarized. Of importance here, the power of attorney includes the following language: "this Power of Attorney shall not terminate on death or disability of the principal."

Wakil Khan died in India on November 30, 1996, before any distributions of Aqeel Khan's estate had been made. Wakil Khan had no estate other than the property he would have received from Aqeel Khan. Defendant Tahira Khanam is Wakil Khan's second wife and sole surviving heir. She claims an interest in Aqeel Khan's estate through her inheritance from Wakil Khan.

At oral argument, Petitioner's Counsel presented a copy of the power of attorney along with the affidavit of Iftikhar Ahmed Khan, one of the attesting witnesses, which affirms Wakil Khan's grant of authority to Petitioner, verifies that it was Wakil Khan's intention to confer such authority with respect to Aqeel Khan's estate, and further verifies that Wakil Khan executed the power of authority in the presence of the attesting witnesses. Iftikhar Khan's affidavit states that "Wakil Ahmad Khan had a clear intention to confer power on the said attorneys to act in respect of said estate even after his death and included a paragraph in the said document to the effect that 'this power of attorney shall not terminate on the death or disability of the principal'."

Petitioner's Counsel called Petitioner to testify in support of those allegations contained in the Petition. Petitioner also testified that he had no knowledge of any other will executed by Wakil Khan. Petitioner's Counsel next called Mohammed Zakaria Siddiqi, a resident of India, a retired law school dean, and friend of Wakil Khan. Mohammed Siddiqi identified the power of attorney executed by Wakil Khan and verified the proffered copy as a true copy thereof. Mohammed Siddiqi also identified a proffered copy of Wakil Khan's death certificate and a true copy thereof. Both documents were admitted into evidence. Mohammed Siddiqi testified that he was present with Wakil Khan and Iftikhar Khan when Wakil Khan signed the power of attorney, that Wakil Khan was in "proper senses," that Wakil Khan "signed, published, and declared" that the power of attorney was his last will and testament, and that the power of attorney is the only will executed by Wakil Khan. The Court asked Mohammed Siddiqi whether he testified that Wakil Khan "signed, published, and declared" the power of attorney to be his last will and testament because of the language indicating that the power of attorney should continue after Wakil Khan's death or for some other reason. Mohammed Siddiqi responded that Wakil Khan spoke of the instrument as his will and that it was Mohammed Siddiqi's impression that the power of attorney was Wakil Khan's will.

Petitioner urges the Court to find that the statement "this Power of Attorney shall not terminate on death or disability of the principal" suffices as the testamentary intent needed to validate the power of attorney as a will under Virginia law. Petitioner further urges the Court to find that the power of attorney was a valid power of attorney during Wakil Khan's life that became his will upon his death. In other words, the power of attorney has a dual existence, operative as both a power of attorney and a will.

The question of whether a power of attorney, which makes an immediate disposition of property and attempts to make a posthumous disposition of property, can be admitted to probate as a will is one of first impression in Virginia. I find that the proffered power of attorney is not a valid will under Virginia law because the power of attorney lacks the proper testamentary intent.

As a preliminary issue, Virginia law controls the validity of the proffered instrument and the distribution of Aqeel Khan's real property. Under Virginia law, a decedent's personal property passes according to the law of the state where he was domiciled at his death, but his real estate passes according to the law of the state where it lies. *French v. Short*, 207 Va. 548, 551, 151 S.E.2d 354 (1966) (citing Va. Code Ann. § 64-55 (Michie 1950), and *Rinker v. Trout*, 171 Va. 327, 198 S.E. 913 (1938)).

Under Virginia law:

> no will shall be valid unless it be in writing and signed by the testator, or by some other person in his presence and by his direction, in such manner as to make it manifest that the name is intended as a signature; and moreover, unless it be wholly in the handwriting of the testator, the signature shall be made or the will acknowledged by him in the presence of at least two competent witnesses, present at the same time; and such witnesses shall subscribe the will in the presence of the testator, but no form of attestation shall be necessary. If the will be wholly in the handwriting of the testator, that fact shall be proved by at least two disinterested witnesses.

Virginia Code Ann. § 64.1-49 (Michie 2002). The form of the will is not critical. Virginia Code Ann. § 64.1-45 provides that "except when it would be inconsistent with the manifest intent of the legislature, the word 'will' shall extend to a testament, and to a codicil, and to an appointment by will, or by writing in the nature of a will, in exercise of a power; and also to any other testamentary disposition." Virginia courts have long held that:

> there is nothing that requires less formality than the body of a will or testament. If it be duly signed, attested and published, it may assume almost any form, provided it be intended by the party to take effect after his death. … Nor is it necessary that the testator

should intend to perform or be aware that he has performed a testamentary act. ... It is, therefore, well settled that the form of a paper does not affect its title to probate, provided it be the intention of the deceased that it should operate after his death.

*Gooch v. Gooch*, 134 Va. 21, 35-36, 113 S.E. 873 (1923) (citing *Pollock v. Glassell*, 43 Va. (2 Gratt.) 439, 455-56 (1846)).

However, the content of the will is critical and determinative. To qualify as a valid will, the proffered instrument must reflect the testator's intent to dispose of property after the testator's death. See *Pollock v. Glassell*, 43 Va. at 455-56, see also *Smith v. Smith*, 112 Va. 205, 208, 70 S.E. 491 (1911) (stating that the essence of a will is a "legal declaration of a person's mind as to the manner in which he would have his property or estate disposed of after his death; the written instrument, legally executed, by which a man makes disposition of his estate, to take effect after his death.").

It is clear from the earliest cases on point that testamentary intent is required to validate a will regardless of form. Regarding whether a paper offered for probate can be in the form of some other legal instrument, the Supreme Court has said:

all the authorities hold, indeed it is very clear, it is not necessary to the validity of a will that it should have a testamentary form, or that the decedent should know that he had performed a testamentary act, or that he should intend to perform such act. A deed poll, or an indenture, a bond, a marriage settlement, a letter, a promissory note, and the like, have been held valid as a will. If the paper contains a disposition of the property, to take effect after the death of the testator, though it was not intended to be a will, but an instrument of a different shape, yet if it cannot operate in the character in which it was intended, it may operate as a testamentary act.

*McBride v. McBride*, 67 Va. (26 Gratt.) 476, 480 (1875). The *McBride* Court cited the dissenting opinion in *Sharp v. Sharp*, 29 Va. (2 Leigh) 249, 260 (1830), for the proposition that:

[a] paper is not to be established as a man's will merely by proving that he intended to make a disposition of his property

similar to or even identically the same with that contained in the paper. It must satisfactorily appear that he intended the very paper to be his will. Unless it does so appear, the paper must be rejected, however correct it may be in its form, however comprehensive in its details, however conformable to the otherwise declared intention of the party, and although it may have been signed by him with all due solemnity.

*Id.* That same language is later quoted with approval in *Smith v. Smith*, 112 Va. at 209. The *Smith* Court held that a paper containing the language "every thing is Lou's" (Lou being the writer's wife) and offered for probate was not a will but a gift because such language was not related to the writer's death. The *Smith* Court stated that the [testator] "must have designed [the instrument] to dispose of his property ... he must have looked to that paper as the means by which an object was to be accomplished, and that object the disposition of his property after his death ... unless he intended this, the paper is not his will, whatever he may have called it." *Id.* (quoting *McBride, supra*).

In *Grimes v. Crouch*, the Supreme Court determined that a duly executed holographic will simply stating "ever thing left to sister for life times [sic]" was a valid will because the court determined that the word "left" is of testamentary significance. 175 Va. 126, 132, 7 S.E.2d 115 (1940). The court defined "leave" as "to let remain or have remaining at death; hence to transmit, bequeath, or give by will." *Id.*

The difference between *Smith* and *Grimes* is the timing of the disposition. The paper at issue in *Smith* resembled a present transfer because it did not refer to a disposition upon the writer's death, and the paper at issue in *Grimes* was approved as a will because it made such a reference. This distinction places special emphasis on the often cited phrase "to take effect after his death." See e.g. *Poindexter v. Jones*, 200 Va. 372, 106 S.E.2d 144 (1958). Thus, the testamentary intent required is the intent to dispose of property after the testator's death.

Petitioner argues that the statement "this Power of Attorney shall not terminate on death or disability of the principal" establishes the testamentary intent required under Virginia law. Such a statement clearly indicates Wakil Khan's intent that the grant of authority contained in the power of attorney should continue upon his death. Moreover, the testimony before the Court indicates that Wakil Khan intended the power of attorney to be his will. Because the power of attorney raises the specter of testamentary intent, this

Court may consider such testimony to determine whether the power of attorney is a valid testamentary instrument. *Bailey v. Kerns*, 246 Va. 158, 164, 431 S.E.2d 312 (1993) (holding that when the face of the instrument contains some evidence of testamentary intent, extrinsic evidence may be admitted to determine whether the instrument is testamentary in nature). Thus, the Court is presented with an instrument that makes an immediate grant of authority to possess and dispose of property, purports to continue that authority after the maker's death, and was intended by the maker to be a will.

The critical inquiry here is whether the testamentary intent required under Virginia law is the intent that the disposition *may* take place after the testator's death or that the disposition take place *only* after the testator's death. If all that is required of a testamentary instrument is that it make a posthumous disposition of property possible, then it is conceivable that the proffered power of attorney could qualify as a valid will. If, on the other hand, a testamentary instrument makes only a posthumous disposition of property, then the proffered power of attorney is invalid as a will. There is little direct authority supporting either side, but I find the greater weight of that authority dictates that testamentary intent is the intent to dispose of property only after the testator's death.

First, it is stated in *Timberlake v. State-Planters Bank*, that "[a] will is an ambulatory instrument, not intended or allowed to take effect until the death of the maker ... it may be changed during life as often as the mind and purpose of the testator change ... while he lives his written will has no life or force, and is not operative or effective for any purpose." 201 Va. 950, 957, 115 S.E.2d 39 (1960) (citing 95 C.J.S., *Wills*, § 310, p. 110; *Spinks v. Rice*, 187 Va. 730, 47 S.E.2d 424 (1948)). It is further stated in *Poindexter*, that "wills are ambulatory and operate only upon and by reason of death." 200 Va. at 384.

Second, *Spinks v. Rice*, while not directly on point is compelling. In *Spinks*, decedent's valid holographic will was admitted to probate. After probate of the will, the will contestant instituted an equity suit in which he alleged that another paper writing, in which decedent and the will contestant agreed that the survivor of the two would receive the other's assets upon the death of either of them, superceded the will, and thus he was entitled to the decedent's entire estate. Notably, in rejecting the will contestant's argument, the *Spinks* Court stated that the proffered instrument:

> fundamentally and intrinsically ... bears and has all the necessary qualities of a will and falls short of full recognition as

such, not because of inherent insufficiency, but only due to lack of formal execution. ... They call it an agreement, but its name does not necessarily make it such. It is simply what it appears to be, i.e., an ambulatory, dispository, reciprocal testamentary undertaking between two people to pass, upon the death of the maker first to die, his or her property to the survivor. ... It has been finally executed by the parties ... and is, in and of itself, supposed to pass property only upon death. ... Being a will in substance, but lacking in the necessary formalities of execution, no property can pass thereunder as a will. ... If it had been formally and properly executed, it would have been the will of each, to be probated upon the death of each, and any property that passed thereunder would have passed by virtue of the testamentary character of the instrument.

187 Va. at 736-37. In determining that the instrument at issue would have been a valid will if properly executed, and therefore could not be a contract, the *Spinks* Court stated:

The essential characteristic of a will is that it operates only upon and by reason of the death of the maker. Up to that time, it is ambulatory and revocable. By its execution the author has parted with no rights nor divested himself of no interest in or control over his property, and no rights have accrued to, and no estate has vested in, any other person. The death of the maker for the first time establishes the character of the instrument. It then ceases to be ambulatory, acquires a fixed status, and operates as a transfer of title. ... An instrument which is to operate in the lifetime of the donor, and to pass an interest in his property before his death ... is ... not a will. It is essential to a will that it should be made to depend upon the death of the maker to consummate it, up to which time it is inoperative and revocable.

*Id.* at 740-41 (citing 127 Mich. 444, 86 N.W. 960, 89 Am. St. Rep. 487 (1901)). The *Spinks* case thus suggests that the will's distinguishing feature is that it disposes of property after the testator's death and not during the testator's life. Accord *Bickers v. Shenandoah Valley Nat'l Bank*, 197 Va. 145, 88 S.E.2d 889 (1955) (reversing a lower court holding that an instrument was

a valid inter-vivos trust and not a will because the instrument was testamentary in nature as it granted no interest at the time of its execution); *Short v. A. H. Still Inv. Corp.*, 206 Va. 959, 147 S.E.2d 99 (1966) (distinguishing a contract from a will on the basis that the proffered instrument created a present interest in one of the signatories, and was therefore not a will).

Next, the distinction noted between *Smith* and *Grimes* seems to preclude any present transfer of property from the definition of testamentary intent. The fact that the proffered instrument in Smith purported to make a present transfer dissolved any testamentary intent by the maker. *Smith v. Smith*, 112 Va. at 208. The word "testamentary" also seems to preclude any present transfer of property in an instrument purported to be a will. "The word 'testamentary' means 'applicable or related to death; having to do with dispositions or arrangements *effective upon the happening of that event*'." *Bailey*, 246 Va. at 164 (citing *Poindexter v. Jones*, 200 Va. 372, 376, 106 S.E.2d 144, 146 (1958)) (emphasis added). Indeed, the well-cited provision that a will may assume almost any form, "provided it be intended by the party to take effect after the maker's death" itself suggests that the disposition must be intended after the maker's death and not before.

Finally, if what distinguishes a valid will from a contract or an inter-vivos trust is the absence of any transfer of the testator's property during the testator's life, it stands to reason that a power of attorney is equally distinguishable on those grounds. See *Spinks*, 187 Va. at 736-37; *Short*, 206 Va. 959, 147 S.E.2d 99; *Bickers*, 197 Va. 145, 88 S.E.2d 889.

While none of these cited authorities, nor any brought to the Court's attention, stand directly for the proposition that "testamentary intent" means an intent to dispose of property *only* after death, a reasoned reading of these cases leads inevitably to the conclusion that it must.

The power of attorney at issue here makes an immediate grant of authority to the attorneys in fact to possess and dispose of Aqeel Khan's real property. It also clearly evinces Wakil Khan's intent that such authority should continue after his death, making a posthumous disposition possible. I find that the proffered power of attorney therefore lacks the testamentary intent required under Virginia law.

Petitioner also argues that the power of attorney has a dual existence, operative both as a power of attorney during life and a will after death. This cannot be so. If the power of attorney is valid as a power of attorney, it must not be a valid will for want of true testamentary intent. That defect cannot be cured in equity by transforming the power of attorney into another instrument.

A valid will does not suddenly spring to life from the ashes of a former power of attorney upon the happening of some specified event, namely the principal's death. If it did, the Court would be permitting parties to evade the requirements necessary to draft a valid will. The Court will not later reform defects in order to validate a will that was invalid when and as drafted.