# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

JOHN T. GRIMES, ET AL. V. EVA J. CROUCH, ET AL.

February 26, 1940.

Record No. 2146.

Present, All the Justices.

The opinion states the case.

*Charles F. Harrison* and *Stirling M. Harrison,* for the appellants.

*Charles Pickett* and *Stilson H. Hall,* for the appellees.

HOLT, J., delivered the opinion of the court.

C. A. Grimes, now dead, left this written by himself:
"Ever thing left to sister for life times."

"C. A. GRIMES."

By it he undertook to dispose of an estate consisting of money in bank, $1,191.49, intangible personal property, $8,679.37, and real estate, $4,850.00.

E. O. Russell, county clerk of Loudoun county, and, as such, clerk of its circuit court, upon proper proof, admitted it to probate on October 1, 1937, as the true last will and testament of C. A. Grimes.

On February 7, 1937, John T. Grimes and Rhoda A. Ridgeway, brother and sister of the decedent, instituted this suit, the main purpose of which was to declare it, as a will, void and of no effect. In due course an issue of *devisavit vel non* was made up and submitted to a jury, who on October 28, 1938, returned into court this verdict:

"We the jury on the issue joined find the paper writing in evidence in the words and figures following to-wit: 'Ever thing left to sister for life times, C. A. Grimes,' to be the true last will and testament of C. A. Grimes, C. T. Potterfield, Foreman."

There was a motion to set it aside, which was overruled, and from the decree of confirmation an appeal to this court has been allowed.

A motion to dismiss has been interposed and for these reasons:

"1. Neither the defendants in error nor their counsel had reasonable notice of the time and place at which the purported bills of exception numbered from 2 to 4, both inclusive, would be tendered to the Circuit Court of Loudoun county, Virginia, or the judge thereof for his signature or authentication.

"2. That it was not made to appear in writing to the Circuit Court of Loudoun county or to the judge thereof,

that the defendants in error or their counsel had reasonable notice of the time and place at which the purported bills of exception Nos. 2 to 4, both inclusive, would be tendered for signature and authentication."

Code, section 6252, as amended by Acts 1930, ch. 246, provides:

"But before the court, or judge in vacation shall sign any bill of exception so tendered it shall appear in writing that the opposite party or his attorney has had reasonable notice of the time and place at which said bill of exception is to be so tendered to the court or judge."

In *Scholz* v. *Standard Accident Ins. Co.*, 145 Va. 694, 134 S. E. 728, Judge Burks said:

"If the notice was not in fact given, the act of signing the bills of exception was a nullity, and they cannot be considered. It must in some way be made to appear affirmatively that the notice was given, or was waived, but the manner of showing this fact is not pointed out by the statute."

In *Sophie Bukva* v. *F. D. Matthews,* 149 Va. 500, 140 S. E. 674, it was held that the facts necessary to show compliance with this statutory requirement might be shown by evidence *aliunde* of the record.

It appears from an affidavit of Stilson H. Hall, one of counsel for the defendants, that he had written notice to the effect that an application would be made on the 19th day of January, 1939, to the judge for a transcript of the record, and that on the 27th day of January, 1939, he was "called to the clerk's office of the Circuit Court of Loudoun county, Virginia, by Charles F. Harrison, Esquire, counsel for John T. Grimes and Rhoda A. Ridgeway on the 27th day of January, 1939, when he advised me that he was tendering certain bills of exception to Judge Alexander for his signature, Judge Alexander being then and there present in the clerk's office. Knowing that Mr. Harrison had not complied with the statute in such cases made and provided and believing that any action taken by Judge Alexander

under such circumstances would be of no effect, I made no protest, feeling that I was under no duty to advise opposing counsel that he was not proceeding in accordance with the statutory requirements. However, I did make a statement that the record presented was substantially correct as I remembered it to have been given."

As was said by Judge Burks, this statutory notice must be given or waived. Notice was given to counsel for the defendants; he was present and made no objection.

■ Plainly there was a waiver of this statutory requirement.

At the trial E. O. Russell, clerk, testified that the signature and body of the paper writing were proven before him by N. C. Nichols and James McIntosh to be wholly in the handwriting of Charles A. Grimes and that it was thereupon admitted by him to probate.

George F. Weaver was next called. He thought that decedent knew what property he had, to whom he wished to will it, that he was of sound mind and disposing memory, and that the will was wholly in his handwriting. On one occasion he called his attention to the importance of making a will and was told that "he had taken care of sister, who had always taken care of him;" and that he was accustomed to speak of his sister, Eva J. Crouch, as "sister," a term which he did not apply to his other sister, Mrs. Ridgeway. These two sisters and his brother, John T. Grimes, made up the family.

A. S. Jenkins was next called. He is cashier of the Peoples National Bank of Leesburg, at which the testator kept an account. He regarded him as capable of knowing what property he had and to whom he would wish to leave it.

N. C. Nichols was next called, who said that he was an attorney and attended to decedent's business; that the will was in his handwriting and that he regarded him as of sound mind and disposing memory.

James McIntosh, a paying teller of the Peoples National Bank of Leesburg, testified also as to the authenticity of the handwriting and as to the capacity of the testator.

■ Thereupon proponents rested, and the contestants moved to strike the evidence, which motion was argued but not passed upon. It is contended that this motion should then have been sustained, and it is said that not a scintilla of evidence had been introduced which would indicate that the paper was testamentary. Of course the paper must bear upon its face indicia of testimonial intent. No amount of evidence would entitle an I. O. U. to probate.

Reliance is placed upon *Smith* v. *Smith,* 112 Va. 205, 70 S. E. 491, 33 L. R. A., N. S., 1018, where this paper came under review:

"Dec. 24, 1900 Every thing is Lous

"G. T. Smith, 314 South Patrick St. Ax Va."

The court said:

"The words, 'Every thing is Lous,' which constitute the entire body of the paper here, are most reasonably to be interpreted as referring to an existing fact, * * * "—to a present gift. And further: "But while the courts have gone far in construing almost any form of instrument to be a will, we have been unable to find a case in which a paper with nothing on its face to indicate that it was intended to be testamentary was held to be entitled to probate as a holograph will."

■ The word "left" is of testamentary significance and in that sense is in common use.

■ Among other definitions is this, taken from the Century Dictionary: "To let remain or have remaining at death; hence to transmit, bequeath, or give by will: As he leaves a wife and children, or has left his property in trust for their use."

"There be of them that have left a name behind them." Eccl. XLIV.

■ "The words 'leave' and 'give,' especially when used in a will, without qualifying or restraining words, are interchangeable terms and mean one and the same thing." *Carr et al.* v. *Effinger et als.,* 78 Va. 197.

Moreover, the will did what decedent told Weaver he intended to do; "he had taken care of sister, who had always taken care of him."

Code, section 5229, tells us how a will must be proven. It must be attested by at least two competent witnesses present at the same time. If it be wholly in the handwriting of the testator, that fact shall be proven by at least two disinterested witnesses.

■ Proof of the due execution of a paper, testamentary upon its face, entitles the propounder *prima facie* to have it admitted to probate. *Rust* v. *Reid*, 124 Va. 1, 97 S. E. 324.

■ In *Dickens* v. *Bonnewell*, 160 Va. 194, 168 S. E. 610, this is quoted with approval from 76 A. L. R., p. 617:

"It is a well-established rule that a complete attestation clause reciting the observance of all statutory requirements raises a presumption of the due execution of a will if there is no contest as to the genuineness of the signature of the witnesses, or that of the testator, or after these signatures are proved to be genuine."

Of course this principle applies to holographic wills.

See also, *Redford* v. *Booker*, 166 Va. 561, 185 S. E. 879.

■ Up to this point, the due execution of the will had been proven, and it had been shown without objection that it was in accordance with the testator's declared purpose. His capacity had been shown, and so the court might well have overruled the motion to strike and submitted the case to the jury. Moreover, the order of the introduction of evidence is within its sound discretion, and it is common practice to refuse to strike until the evidence is all in. When it was in, the motion was not renewed. A propounder may rest upon proof of due executon, or he may, at his option, disclose his entire case in chief. *Rust* v. *Reid, supra.*

"Even where the trial court would have been warranted in sustaining the motion at that juncture, it does not follow that a judgment for the plaintiff will be reversed, if the court overrules the motion. If the cause is thereafter proceeded with to what appears to be a fair development of the evidence for both parties, and upon a consideration of the

whole evidence the verdict of the jury in favor of the plaintiff is plainly right, this court will not reverse a judgment for the plaintiff and order a new trial. Section 6365, Code Va. 1919. If the defendant desires to finally conclude the case at that juncture at all events, he should demur to the evidence instead of moving to strike it out." *Jones* v. *Hanbury,* 158 Va. 842, 164 S. E. 545.

 From what has been said it follows that the court should not have sustained the motion to strike, and, even if it might have then been sustained, no error was committed in permitting the case to be thereafter fully developed.

 Eva J. Crouch, who had been given a life estate, was then called. She said that she cooked for this brother, washed for him, attended to him when he was sick, went to see him about three times a day and put him to bed at night. Next she tells us what the testator's relations were with his brother John. They lived in the same house, but they had not spoken to each other for more than thirty years and for many years would not eat at the same table. She was always called "sister," but Mrs. Ridgeway was called "Rhody." He saw little of Rhody, and there is nothing in this record to show that she took any special interest in him. Testifying as to the will itself, she said that her brother was quite ill in 1936 and upon one occasion asked her to get him a piece of paper, envelope and pencil; this she did, and she identifies the paper as that upon which the will is written. After complying with her brother's request, she went downstairs to prepare his dinner. Upon her return he gave it to her and told her to keep it until he was dead, as it was for her benefit, and then to give it to Mr. Nichols, his attorney. This she afterwards did. Her account of what she did with it is somewhat confusing; she tells us that she hid it in the bed, afterwards that she got it from a tin box in her brother's room, and later that she got it from the bed where she had put it. It is for the jury to search out the facts. Nor is it important whether this will was kept in a tin box or hid in a bed.

Dr. Harry Gibson, his physician, upon the occasion of his last visit, said that the question of his bill came up. Eva asked if she should pay it, and Mr. Grimes answered: "It doesn't make any difference; what is mine is yours." And again, "What is mine is Sis'."

This physician said that the testator had been subject to epileptic attacks for twenty-nine years; that his face was twisted and his blood pressure high, but his mind was clear.

At one time he transferred his bank account to the joint account of Eva and of himself, this because he had been induced to sign checks which he should not have signed, or which, at any rate, he was not called upon to sign.

It may fairly be said that this testator was not strong-minded. He was an epileptic in ill health, and his personal habits were not fastidious, but there is overwhelming evidence that he was competent to make a will. Indeed, nobody has testified that he was incompetent.

We have here a jury's verdict, which upon an issue of *devisavit vel non* ends this litigation to the same extent that a jury's verdict would settle it in a common-law action. *Lamberts* v. *Cooper's Ex'r*, 29 Gratt. (70 Va.) 61; *Redford* v. *Booker, supra; Ferguson* v. *Ferguson,* 169 Va. 77, 192 S. E. 774.

Bills of exception 2 and 3 deal with the evidence of Eva Crouch wherein she said that the testator and his brother did not speak to each other. This is unimportant. It appears from undisputed evidence that C. A. Grimes was capable of making a will and that he, himself, wrote that in judgment.

"Where a testator has legal capacity to make a will, he has the legal right to make an unequal, unjust or unreasonable will." Michie's Digest, Vol. 9, p. 1058, citing many cases.

And if it be said that he omitted to mention one who might have been expected to be the natural object of his bounty, the reasons therefor may be shown, be they good or bad.

The gift is to "sister." The testator had two sisters, Eva and Rhody. Any latent ambiguity which might be caused by this incomplete designation has been wiped away by competent evidence. *Hawkins* v. *Garland's Adm'r*, 76 Va. 149, 44 Am. Rep. 158; *Senger* v. *Senger's Ex'r*, 81 Va. 687; Schouler on Wills (6th Ed.), Vol. 2, sec. 929.

There is no error in the decree of the trial court, and it is affirmed.

*Affirmed.*