# Ricbmond

## James B. Mumaw v. Mary R. Mumaw, Et Al.

March 4, 1974.

Record No. 8250.

Present, All the Justices.

*Joseph B. Hyman; M. Patton Echols, Jr. (Echols & Hyman*, on brief), for appellant.

*J. Sloan Kuykendall (William H. Logan; Kuykendall, Hall & Whiting*, on brief), for appellees.

I'Anson, J., delivered the opinion of the court.

This cause originated as a suit for partition of a 100-acre farm devised by the decedent, E. A. Mumaw, to his wife, Mary R. Mumaw, for life with remainder to decedent's seventeen nieces and nephews under the terms of a holographic will dated February 19, 1945, and admitted to probate on October 24, 1959.

The partition suit was filed about eight years after the death of E. A. Mumaw by the plaintiffs, Mary R. Mumaw and eight of decedent's nieces and nephews. One of the defendants, James B. Mumaw, the son and only surviving descendant of the decedent, filed an answer and an amended answer asking affirmative relief, which was treated as a cross-bill.

James B. Mumaw asserted in his amended answer that his father had devised the farm to him, subject to a life estate in Mary R. Mumaw, by a holographic will dated September 14, 1948, which had become lost or had been destroyed by someone other than the decedent, and asked that this will be established as the last will of his father. Alternatively, he asked that a letter dated September 24, 1950, be admitted to probate as the will of the decedent, or that the court hold that his father had died intestate because the September 24, 1950, letter revoked the 1945 will.

After hearing evidence ore tenus, the chancellor, in a written opinion, held that insufficient proof had been adduced to establish and prove the alleged lost holographic will dated September 14, 1948, as required by Code § 64.1-49; that the letter dated September 24, 1950, could not be established and probated as the will of the decedent; and that the same letter was not a valid revocation of the 1945 will. Thus, the chancellor denied the relief prayed for by James B. Mumaw, and ordered that the decedent's "estate be distributed" in accordance with the 1945 will. We granted the defendant, James B. Mumaw, an appeal.

The evidence shows that E. A. Mumaw executed a joint will with his wife, Mary R. Mumaw, on April 12, 1938, which was duly admitted to probate. In this document he declared he would later dispose of his 100-acre farm, known as "Harpine Farm," in a separate will.

On February 19, 1945, E. A. Mumaw made a holographic will in which he devised a life estate in the farm to his wife and directed that upon the death of himself and his wife Harpine Farm be sold to the highest bidder, and that the proceeds, subject to a bequest of $500 to his son, James B. Mumaw, and two other bequests of $200 each, be distributed among his nieces and nephews.

E. A. Mumaw was committed to Western State Hospital on January 4, 1946. He remained there until July 28, 1959, the date of his demise.

On September 24, 1950, Mumaw wrote his son, James, a letter, which in part read:

"I wish to inform you that on *Sept. 14, 1948*, I *bequeathed* to you by *my* last, *'Will,'* my *farm (Harpine)* south of *Conicville*, Va., on west side of *backroad* after my *wife's death (Mary R. Mumaw)* and my *own death;* thereby *complying* to our *'Joint Will'*, as provisions as stated therein, *'Our Joint Will'*, disposing of my *farm (Harpine)*. I have the, *'Will'* written and in my *letter box* here in *Attendants room*. This *nullifies* the *one* in (lock-box) Mt. Jackson, Va.,—Bank. . . .
. . . .

"P.S.—Be sure and keep this *letter*." [1] (emphasis in original.)

Mumaw wrote to his son again on October 8, 1950. This letter, in material part, stated:

"Write to me in your *next letter*, the *bequest* I had given you by *'Will,'* to *you* in my other letter so I know if *you* rec'd it as *written*." (*Underscoring* in original.)

In yet another letter, dated January 31, 1951, Mumaw wrote James:

"I am glad to know you rec'd my letter about the, *'Will,'* to you of the *'Harpine'* farm; after *myself* & *Mary's* death. Take care of your *letters*, as I have it *written* & *sealed* here in my *letter box*." (*Underscoring* in original.)

After E. A. Mumaw's death the hospital authorities delivered to Mary R. Mumaw his possessions, including a box containing several papers.

Mary R. Mumaw testified that she never examined those papers. After keeping the box on a shelf in her home for about five years, she burned the papers without any knowledge of their contents. She said, however, that her husband had told her when she visited him in the hospital that he had executed a new will leaving Harpine Farm to his son.

Dr. Grey, of Western State Hospital, testified that the attendants' room was a storage area where the valuables of patients were kept. The room was kept locked and patients were not allowed to enter it.

---

1. The chancellor held that the decedent possessed sufficient mental capacity to make a will on September 14, 1948, the date mentioned in the September 24, 1950, letter. Cross-error was not assigned to this holding.

If a patient desired any of his possessions in the room, he had to ask an attendant to bring them to him.

■ James B. Mumaw contends that the chancellor erred in his ruling that insufficient proof had been shown to establish the holographic will dated September 14, 1948. He relies on the letter of September 24, 1950, and Mary R. Mumaw's testimony to show the existence and contents of the 1948 holographic will. This proof, he argues, is a substantial compliance with Code § 64.1-49.

To establish a lost or destroyed will, the proponent is required to prove by clear and convincing evidence the will's prior existence in legal form, its contents, and its loss or destruction. "A court of equity will not establish a muniment of title without the clearest and most satisfactory" evidence. *Tate* v. *Wren*, 185 Va. 773, 782, 787, 40 S.E.2d 188, 192-93, 195 (1946). *See Gibbons* v. *Rew*, 164 Va. 339, 343, 180 S.E. 153, 155 (1935).

While there was evidence tending to show that E. A. Mumaw had told his son, James, of the existence and the contents of the alleged will of 1948, and had told his wife, Mary, that he had made a new will leaving Harpine Farm to his son, the evidence adduced by defendant Mumaw was insufficient to prove that his father had executed the alleged 1948 holographic will in legal form, as required by Code § 64.1-49.

Code § 64.1-49, in pertinent part, provides:

"No will shall be valid unless it be in writing and signed by the testator. . . . If the will be wholly in the handwriting of the testator that fact shall be proved by at least two disinterested witnesses."

It cannot be determined from decedent's letter of September 24, 1950, whether the alleged document was an attested will or "wholly" in decedent's handwriting. There was no testimony by any person who claimed that he had seen the alleged 1948 will. Obviously it could not be proved by two disinterested witnesses. Thus, the evidence before the chancellor was insufficient to establish an alleged lost or destroyed will which could be probated.

■ James B. Mumaw next contends that the letter dated September 24, 1950, when read with the subsequent letter of October 8, 1950, constituted a valid will leaving Harpine Farm to him.

Although it is true, as argued, that a letter can constitute a will, "[i]t must satisfactorily appear that he [the letter writer] intended

the very paper to be his will." *McBride* v. *McBride*, 67 Va. (26 Grat.) 476, 481 (1875); *Thompkins* v. *Randall*, 153 Va. 530, 536, 150 S.E. 249, 250-51 (1929); *Smith* v. *Smith*, 112 Va. 205, 209, 70 S.E. 491, 493 (1911). In addition, for such a writing to be a valid will in Virginia, testamentary intent must be found on its face, not from extrinsic evidence. *Quesenberry* v. *Funk*, 203 Va. 619, 624, 125 S.E.2d 869, 874 (1962); *Poindexter* v. *Jones*, 200 Va. 372, 376, 106 S.E.2d 144, 147-48 (1958).

The letter of September 24, 1950, on its face merely informed defendant Mumaw that in another document dated September 14, 1948, the decedent had devised Harpine Farm to him. The September 24, 1950, writing was merely a communicative letter. It does not appear that the decedent intended the letter itself to make a disposition of his property after his death. Thus, it was not testamentary in character and could not be probated as a will.

James B. Mumaw further contends that the letter of September 24, 1950, revoked the 1945 will, and since he was the decedent's only descendant the farm descended to him by the law of intestacy. He relies on the following statement in the September 24th letter: "This *nullifies* the *one* in (lock-box) Mt. Jackson, Va.,–Bank."

The burden of proving revocation of a will is upon the contestant. *McKenzie* v. *Francis*, 214 Va. 104, 107, 197 S.E.2d 221, 224 (1973).

To properly revoke a will in Virginia, the appropriate statute, Code § 64.1-58, must be followed.

Code § 64.1-58, in relevant part, provides:

"No will . . . shall be revoked, unless by a subsequent will or codicil, or by some writing declaring an intention to revoke the same, executed in the manner in which a will is required to be executed. . . ."

The statement relied on in the September 24, 1950, letter meant, at best, that the will of September 14, 1948, not the letter itself, revoked the 1945 will. The language used in the letter merely stated that another document had revocative effect. The other document referred to has not been established. The statement in the letter was not testamentary in character, and the letter itself was not intended by the decedent to revoke the 1945 will. Thus, James B. Mumaw

did not bear the burden of proof required of him to show revocation of the 1945 will.

For the reasons stated, the decree of the court below is

*Affirmed.*