## Richmond

### FRANK McCUTCHAN, JR., INDIVIDUALLY V. A. CAMPBELL HEIZER,* ET AL., EXECUTORS, ETC., ET AL.

April 22, 1977.

Record No. 760470.

Present, All the Justices.

*Talmage N. Cooley (Edmunds, Freed, Cooley & Willetts*, on briefs), for appellant.

*Rudolph Bumgardner, III (W. F. Vellines, Jr.; Bumgardner, Bumgardner, Miller & Rhea*, on brief), for appellees.

HARMAN, J., delivered the opinion of the court.

This appeal challenges the Chancellor's final decree in a suit in the nature of a proceeding *devisavit vel non*. Over the appellant's objection, the decree sustained the report of a Master Commissioner in Chancery which held that a holographic writing of Emily McCutchan Beard, deceased, dated June 3, 1971, was not a testamentary document.

Emily McCutchan Beard, a resident of the City of Staunton, died on March 10, 1974. A will dated July 14, 1967, and a codicil dated April 8, 1971, both of which had been prepared by her attorney, were found in her safe deposit box at a Staunton bank. The parties agree these documents are valid testamentary instruments.

---

* Other than in the bill, and other court papers, this name is spelled "Hizer".

A holographic paper dated June 3, 1971, which is at issue here, was found among the deceased's personal effects in the drawer of a desk at her residence. The three pages of the holograph were still attached to a writing tablet. The holograph reads as follows:

Page 1

"June 3, 1971

"I am going with Emma Thorne Hizer to Charlottesville tomorrow. In case of accident call Bob Hanger. Jane is there. *Jane* my clothes are yours. My diamond ring goes to Carrine McCutchan, also Cameo pin, a family piece Other jewelry, pins costume jewelry, bracelets for Jane and Mason girls, and Chas.

"better watch Vallye gave me to Carrine McCutchan.

"George Payne gets those little walnut box — his name is on them Also silver candle sticks to George.

"Call Frank.

"Pieces here in front room of (indistinguishable) old home for George Payne Came from out home. Oil Painting"

Page 2

"This to Frank

"My will is in bank. Bob Hanger can get will his name is with Bank National Valley. Bob and Campbell Hizer my executor of will. All I ask of the farm is to pay my bequests. You buy farm not paying over twenty thousand. I have in bank National Valley and stock in Charlottesville about five thousand dollars

"My diamond ring to Carrine. Also gold watch. And if Lorraine never calls for gold band dishes, they are yours. The Bullet desk in my room here is for Mason, in place of the China press I gave him then sold. Jane have any thing in house and home she wants."

Page 3

"The walnut table in dining room here is nice, and you have it.

"Emily McCutchan Beard<br>"June 3, 1971" (quotation marks<br>supplied)

In her 1967 will, the testatrix directed the payment of her just debts and expressed a desire concerning her place of burial and the manner in which her grave was to be marked. This will directed that the "McCutchan family lot at Bethel Presbyterian Church . . . be placed under perpetual care" and directed that all taxes, including death and succession taxes, be paid out of the residue of the estate. The will contained bequests ranging from $200 to $6000 to or for the benefit of eight individuals. Each of these bequests lapsed if the beneficiary died before the testatrix. The will also left the sum of $2,000 "to the Treasurer of Bethel Presbyterian Church . . . to be used for the work and purposes of the Church." The testatrix devised a two and one-half acre parcel of land, a part of her farm, to Charles Mason Thompson and directed her executors "to have the same surveyed and make conveyance of the same to the devisee."

Clause Tenth of the will provides:

"*TENTH*: I desire that certain items of personal property, consisting largely of household furniture and furnishings, be distributed as indicated in a memorandum written in my handwriting and to be filed along with this Will, but not to be recorded as a part thereof."

The residuary clause in the will provides:

"*ELEVENTH*: I direct the remainder of my property, real and personal, be converted into cash by my Executors, and that the proceeds therefrom, together with any lapsed or void legacies, together with such cash as may be a part of my estate, after payment of all debts, bequests, taxes, costs of administration, etc., shall be paid in equal shares to: (1) Charles Mason Thompson, if he survive me; (2) Vallie D. Baylor, if she survive me; (3) Jane Thompson Clements, if she survive me; and (4) the Trustees of Bethel Presbyterian Church of Augusta County, Virginia, which gift to the said Church is made as a memorial to my father and mother, namely, Janes B. McCutchan and Susan Finley McCutchan, and the nature and recognition of this memorial, as well as the use of the funds, shall be determined within the discretion of the proper officers of the Church."

Vallie D. Baylor, who was a residuary beneficiary of the will and the legatee of a specific bequest of $6,000, contingent upon her surviving the testatrix, died on October 24, 1970. On April 8,

1971, the testatrix had her attorney prepare and she executed a codicil which revoked the specific bequest to Vallie D. Baylor and substituted the following clause in lieu thereof:

> "*FOURTH*: I give and bequeath to my cousin, Henry D. Baylor, of 322 College Park Drive, Staunton, Virginia, if he survives me, the sum of Three Thousand Dollars ($3,000.00)."

The codicil further provides:

> "In all other respects I do confirm and affirm my said Will of July 14, 1967."

Here, as in the trial court, the crucial question is whether the holograph shows on its face the testamentary intent (*animus testandi*) required to make it a testamentary document.

The appellant argues that it is not necessary that he show the deceased "intended to perform a testamentary act or make a formal codicil, but only to show that the writing contemplates a final disposition of property to take effect posthumously and to be revocable until the time of death." To support his position he relies upon *Henderson* v. *Henderson*, 183 Va. 663, 33 S.E.2d 181 (1945), a case which we hold inapposite because of the very different factual situation presented there.

The rule applicable here was recently restated in *Mumaw* v. *Mumaw*, 214 Va. 573, 576-577, 203 S.E.2d 136, 138-139 (1974), where we pointed out:

> "Although it is true, as argued, that a letter can constitute a will, '[i]t must satisfactorily appear that he [the letter writer] intended the very paper to be his will.' *McBride* v. *McBride*, 67 Va. (26 Gratt.) 476, 481 (1875); *Thompkins* v. *Randall*, 153 Va. 530, 536, 150 S.E. 249, 250-51 (1929); *Smith* v. *Smith*, 112 Va. 205, 209, 70 S.E. 491, 493 (1911). In addition, for such a writing to be a valid will in Virginia, testamentary intent must be found on its face, not from extrinsic evidence. *Quesenberry* v. *Funk*, 203 Va. 619, 624, 125 S.E.2d 869, 874 (1962); *Poindexter* v. *Jones*, 200 Va. 372, 376, 106 S.E.2d 144, 147-48 (1958)."

The Commissioner held that the holograph in issue here was the "memorandum written in my handwriting" referred to by the testatrix in clause *TENTH* of her will. He noted that the memorandum, by the terms of clause *TENTH*, was intended to be precatory, an expression of "desire", and, while the

memorandum was to be filed with the will, it was "not to be recorded as a part thereof", so it had no legally binding effect.

We affirm. Clearly the deceased was mindful of the will which she had executed for she referred to "my will", "will" and "executor of Will" in the holograph. That she attached great importance and significance to this document is evidenced by her recitation in the holograph of the location of the will and her suggestion as to how it could best be obtained. In the holograph she refers to "bequests", which could only refer to the words "give and bequeath" which appear no less than seven times in her will and the April 8, 1971, codicil. We attach significance to the fact that nowhere else in the holograph does the word "bequest" appear. Nowhere in the holograph does she either expressly or impliedly attempt to amend, revoke or modify what she referred to in the holograph as "her will". The two sentences, "All I ask of the farm is to pay my bequests. You buy farm not paying over twenty thousand.", are not words of gift or devise, but words of counsel and advice to "Frank", Frank McCutchan, Jr., the appellant here.

We hold, therefore, that the holographic writing fails to show on its face the required *animus testandi* to make it a testamentary document.

*Affirmed.*