## CIRCUIT COURT OF FREDERICK COUNTY

In re Will of Roland B. Baker

March 12, 1985

Case No. (Chancery) C-84-69

By JUDGE ROBERT K. WOLTZ

The following writing, alleged to be holographic, was presented to the Clerk of this Court for probate some time after an administrator had been appointed on the estate of the presumed intestate:

To whom it may concern

I hear by request our property everything we own be divided between the following

John H. Rinker & Family
Mr. & Mrs. Lewis Strosnider & Family
Miss Kim Grow & May Walker
Miss Chris Barcol          )      these in trust so
Miss Tonya Barcol          )       mother can't spend
$1.00 to Daisy Richard

Roland B. Baker
Bessie M. Baker

Two of the persons listed in the writing now petition the Court for its probate. The pleadings do not disclose whether probate was sought before the Clerk under Section 64.1-77 with appeal under Section 64.1-78 or whether this is an original offering for probate under Section 64.1-80, nor has any convention of parties interested been requested under Sections 64.1-80 and 64.1-81. However, the administrator has filed responsive pleadings and

memoranda of law have been submitted by him and the two proponents. The administrator's memorandum represents that the writing was presented to the Clerk for probate and probate was refused.

For the purposes of this opinion the writing, except for the purported signature of Bessie M. Baker, is assumed to be the holograph of Roland B. Baker duly signed by him. Axiomatically therefore it could not also be the holograph of Bessie M. Baker.

This is a very informal writing but that does not disqualify it from being a will. "There is nothing that requires less formality than the body of a will or testament." *Pollock* v. *Glassell*, 43 Va. (2 Gratt.) 439, 455 (1846). Despite this lack of formality it may still be a will or testament "provided it be intended by the party to take effect after his death." *Id*. Substance therefore rules form in determining whether the writer possessed testamentary intent, the *animus testandi. See Spinks* v. *Rice*, 187 Va. 730 (1948), where a writing in form a contract was held testamentary in substance (but failed as a will because not properly executed).

The *animus testandi* is an indispensable requisite for any testament. *Mumaw* v. *Mumaw*, 214 Va. 573 (1974); *Quesenberry* v. *Funk*, 203 Va. 619 (1962); *Delly* v. *Seaboard Citizens Bank*, 202 Va. 764 (1961); *Poindexter* v. *Jones*, 200 Va. 372 (1958); *Grimes* v. *Crouch*, 175 Va. 126 (1940) and *Smith* v. *Smith*, 112 Va. 205 (1911). In addition, such intent must appear on the face, within the four corners, of the writing. *First Church, etc.* v. *Hutchins*, 209 Va. 158 (1968), and *Quesenberry, Poindexter* and *Grimes, supra*. In *Mumaw* a letter referred to and discussed prior wills but was held to be merely communicative and so not testamentary. In *Quesenberry* a bank form signed by the decedent which established joint survivorship in a bank account was held not to show *animus testandi* and hence was ineffective to make testamentary disposition of the account to its other joint holder. In *Delly* the writing made no change in prior testamentary dispositions and so was held non-testamentary and ineffective to revive a previously revoked will.

Three of the cases mentioned above are similar as they were informal and the existence or not of the *animus testandi* had to be determined from brief language. In *Grimes*, "Ever thing left to sister for lifetimes" was held to show the necessary testamentary character and

intent. The word "left" as a commonly used word to make disposition of property at one's death was the key to the finding of the writer's intent. In *Smith* a dated and signed statement said, "Everything is Lous," Lou being the writer's wife. The Court considered the language reasonably to be interpreted as an existing fact, and did not even carry the connotation of a gift. The writing consequently was non-testamentary. In *Poindexter* the decedent left a paper signed by her setting out city, state and date providing, "I give all that I possess to my beloved nephew Hendley Jones." The holding was the words "give" or "beloved" considered individually or together or with the other words in the writing had "no relation to death nor do they indicate testamentary intent."

Taking the present paper writing in its parts and as a whole it more nearly resembles those in *Smith* and *Poindexter* than the one in *Grimes*. There is nothing in it that definitely indicates disposition at or after death. There is nothing in the four corners referring to the paper as a will or the event of death. The verbs "request" and "own" are in the present tense; the passive verb "be divided" without the addition of "shall" is as likely present tense as future, and perhaps more likely the former. The request is directed non-specifically and particularly is not to an executor. There is no reference to any other paper which might be of a testamentary character. Though not required and perhaps of only moderate significance it bears no date.

There is no testamentary intent showing any of the generally accepted testamentary purposes: positive disposition of property, revocation of some testamentary act previously made, revival of a testamentary paper previously revoked and appointment of an executor or guardian; consequently, "In the absence of a testamentary intent there can be no will." Am. Jur. 2d, *Wills*, Section 12.

Proponent's memorandum asserts the rule that there is a presumption against intestacy. In my view this misplaces the rule, which is one applicable to construction of wills in suits brought for that purpose and not one in probate proceedings. Where a person has executed what is admittedly a will there follows naturally a presumption the person did not wish to die intestate. But in probate proceedings before there has been a determination that a writing constitutes a will there seems to

be no rule of law presuming that a person wished to die testate or intestate.

Based on the foregoing, [an] order denying probate will enter and the contestant-administrator will draft and present it.

Observation is made that there are peculiarities in this proceeding. There seems to be no order of the Clerk from which this suit is presumably an appeal. There has been no request for or convention of the parties in interest and as a result the decree to enter will be ineffective as to those not made parties to this suit.