## CIRCUIT COURT OF THE CITY OF RICHMOND

In re Estate of
Margaret T. Graves

March 26, 1990

By JUDGE RANDALL G. JOHNSON

At issue is whether a certain handwritten passage on the inside cover of a Bible is the holographic will of the decedent, Margaret T. Graves. The entire passage, unquestionably in Ms. Graves's handwriting, is as follows:

> I want little Margie my niece to have this house if moody want to stay here his life time Rights if he want two I want Cathy to have that little antick Radio Big Charles Daughter take care my pets if they are living if little Margie cant take of it may bee Big Charles could come in he is my next Best Friend
>
> april
> 20, 1988            Mrs. Margie T. Graves

The issue, of course, if whether the above writing expresses testamentary intent; that is, whether the decedent intended the writing to direct the posthumous disposition of her property. *See generally* 20 M.J., *Wills*, § 19. While no particular words are required to show such intent, such intent must, nevertheless, be shown. *Id.* Moreover, testamentary intent must be ascertained from the face of the writing itself, and extrinsic evidence is not admissible to prove that such intent existed. *Poindexter v. Jones*, 200 Va. 372, 375, 106 S.E.2d 144 (1958). In deciding whether the necessary testamentary intent existed

here, reference to several Supreme Court cases is instructive.

In *Poindexter v. Jones, supra*, the decedent had written the following:

> Harrisonburg, Va.
> August 20, 1953
>
> I give all that I possess to my beloved nephew Hendley Jones.
>
> Maude R. Snyder[1]

In reversing the lower court's admission of this writing to probate, the Court held that there was nothing about the words used by the decedent -- particularly the words "give" and "beloved" -- which disclosed testamentary intent. After setting forth the dictionary definitions of those terms, the Court stated:

> In context, when considered alone or together, or along with the entire instrument, the two words, "give" and "beloved" have no relation to death nor do they indicate testamentary intent.

200 Va. at 378.

On the other hand, in the case of *Grimes v. Crouch*, 175 Va. 126, 7 S.E.2d 115 (1940), the decedent had written:

> Ever thing left to sister for life times, C. A. Grimes.

175 Va. at 129.

This writing was found to be a will. Specifically, the Court held that "the word 'left' is of testamentary significance and in that sense is in common use:"[2]

---

[1] 200 Va. at 374.

[2] Id. at 132.

Among other definitions is this, taken from the Century Dictionary: "To let remain or have remaining at death; hence to transmit, bequeath, or give by will: As he leaves a wife and children, or has left his property in trust for their use."

*Id.*

Finally, in *Jones v. Brown*, 151 Va. 622, 144 S.E. 620 (1928), the Court stated:

[I]t is a well settled rule of construction that in order to take away the title of the heirs at law, the intention of the testator to dispose of his estate must be manifested with legal certainty by express words or necessary implication: "For conjecture cannot be made to supply what the testator has failed to sufficiently indicate on the face of the will." And "necessary implication" means "so strong a probability of intention, *that an intention contrary to that which is imputed to the testator cannot be supposed.*"

151 Va. at 630 (emphasis added, citations omitted).[3]

Applying the above cases and others here, the court concludes that Ms. Graves's writing lacks sufficient indicia of the necessary testamentary intent to be declared a will. Ms. Graves states "I want" Margie to have the house. Such words do not expressly state, nor necessarily imply, that a transfer of title to Margie is to take place at Ms. Graves's death. Similarly, "if [M]oody want to stay here his life time," while unquestionably suggestive of the creation of a life estate, does not state, nor necessarily imply, that such estate is created · at Ms. Graves's death. The same is true with regard to "want[ing] Cathy to have" the antique radio, or requesting that

---

[3] Although Jones v. Brown involved the construction of a writing already determined to be a will, as opposed to a determination of whether a writing was a will, the Court's discussion of testamentary intent is, in this court's view, equally applicable to both situations.

Big Charles's daughter take care of the pets. In short, while the words used by Ms. Graves are entirely consistent with an intention to make a will, they are not inconsistent with other intentions, such as an expression of what she wanted to happen a week after she wrote it, or a year afterwards, or if she became disabled or infirm. In other words, the writing does not contain such indicia of testamentary intent that "an intention contrary to [such intent] cannot be supposed." *Jones v. Brown, supra.* Accordingly, the writing will not be admitted to probate.