# CIRCUIT COURT OF THE CITY OF NORFOLK

Quenza

v.

Dailey
and A. Baum

July 14, 2003

Case No. (Chancery) CH03-166

BY JUDGE CHARLES E. POSTON

Today, the Court sustains the demurrer to the Bill of Complaint for specific performance with leave for the Plaintiff to file an amended Bill of Complaint.

In the case at bar, Quenza asserts that the "Warehouse Agreement" concerning the real and personal property is "enforceable as a contract" and requests a decree of specific performance. *Bill of Complaint* at ¶ 6-7. Although Quenza has based her lawsuit properly on contract theory, she has not sued the proper party.

*Fisher v. Bauer*, 246 Va. 490, 492 (1993), explains that in contract actions:

> There can be no decree for specific performance, except
> between the parties themselves, or those claiming under them in

> privity of estate, or of representation, or of title; for a contract can only be enforced between the parties themselves, or their representatives in interest.

(quoting *Hoover v. Calhoun*, 57 Va. (16 Gratt.) 109 (1860)). In *Fisher*, a husband contracted with his wife, upon their separation, to provide her with twelve years of support and to name their three daughters as beneficiaries of a portion of a $100,000 life insurance policy. *Id.* at 491. After ten years, the husband died, leaving his insurance policies to his new wife. *Id.* The former wife and the daughters sued the new wife and the executor of the husband's estate, requesting specific performance of the separation agreement. *Id.*

The Virginia Supreme Court held that the plaintiffs could not enforce the contract against the new wife because these parties lacked privity. *Id.* at 492. *See also Soble v. Herman*, 175 Va. 489 (1940) (holding that there was no privity of contract between a creditor and an heir of the decedent's estate where the decedent owed money to the creditor). The Court commented that the executor is the "proper party defendant in suits upon [the husband's] contracts." *Fisher*, 246 Va. at 491. Therefore, the remedy of specific performance was improper because the new wife was never party to the contract; she was "merely a recipient of non-probate assets outside the control of the executor." *Id.* at 493.

Like the plaintiffs in *Fisher*, Quenza has sued the wrong parties.[1] Instead of suing Dailey in her representative capacity as the administratrix of L. Baum's estate, Quenza sued Dailey and A. Baum in their capacity as sole heirs of L. Baum. Because neither Dailey nor Baum was a party to L. Baum's Warehouse Agreement with Quenza, there is no privity of contract between Plaintiff and Defendants; the law does not permit Quenza to seek specific performance of the Warehouse Agreement against Defendants. The Court, then, sustains the demurrer with leave for Plaintiff to file an amended Bill of Complaint.

The parties' submissions with respect to the demurrer raised additional issues which[2] are likely to arise again after the filing of the amended Bill of Complaint.

---

[1] Note that the plaintiffs in *Fisher* sued both the incorrect party, the new wife who was not privy to the agreement, and the correct party, the executor of the husband's estate who was privy to the agreement.

[2] The Court does not consider whether the Warehouse Agreement's wind-up provision (second provision) is enforceable through specific performance.

*Survivorship Doctrine*

In the initial pleadings, Quenza referred to her interest with L. Baum in the real property as both a tenant-in-common, *Bill of Complaint* at ¶ 1, and a joint tenant, *Id.* at ¶ 6. The original deed between Quenza and L. Baum clearly referred to each party as a tenant-in-common and not a joint tenant. However, for the purposes of the pleadings, Quenza regarded L. Baum and herself as joint tenants most likely because the provision in the Warehouse Agreement stated that "the building and all property attached to it will convey to the surviving partner." *Ex. A.*

Plaintiff's theory that she is entitled to specific performance of L. Baum's interest in the real property because they were joint tenants (with right of survivorship) is misplaced since one cannot create a right of survivorship unless the terms of the conveying instrument clearly show that the right of survivorship was intended. Va. Code Ann. § 55-20 (Michie 2003). The conveyance merely granted the parties a tenancy in common to which the right of survivorship doctrine does not apply. Therefore, the Court is of the opinion that no right of survivorship has been established in the pleadings.

*Will*

Although the Agreement, as a whole, appears to be contractual in nature, Plaintiff suggests an alternative view of this Warehouse Agreement. Plaintiff construes the second provision of the Warehouse Agreement, which conveys the real property to the surviving partner, as testamentary; she believes, in the alternative, that the Warehouse Agreement may operate as a will. *Mem. in Resp. to Defense Dem.* at 6. In certain instances, Virginia Courts have construed documents containing phrases or clauses with testamentary intent as valid wills. However, a close examination of statutory law and case law reveals that the Warehouse Agreement is merely a contract between business partners and cannot operate as a will.

Upon first glance, the Warehouse Agreement appears to satisfy the formalities of a valid will. According to Va. Code Ann. § 64.1-49 (Michie 2003), if a will is not handwritten by the testator, it still must be "in writing and signed" by the testator in the presence of "at least two competent witnesses, present at the same time [. . .] but no form of attestation is required." In this case, the Warehouse Agreement is typed, so Va. Code Ann.

§ 64.1-49 (Michie 2003) applies. Also, L. Baum, who is the alleged testator, has signed the document.

The next inquiry is whether the requisite number of witnesses signed the alleged will. In Virginia, a notary can be a witness. *See Ferguson v. Ferguson*, 187 Va. 581 (1948). Therefore, the notary's signing of the Warehouse Agreement accounts for one of the signatures required. Furthermore, under Virginia law, a beneficiary of a will can be a competent witness. Va. Code Ann. § 64.1-51 (Michie 2003). Thus, Quenza could be a competent witness even though she was the beneficiary of the real property under the terms of the Warehouse Agreement.

Nevertheless, this analysis of the Warehouse Agreement becomes void if the Agreement is construed as a will because it would be construed as a joint will. A joint will is "one single testamentary plan of two or more persons and is separately executed by each of the testators using the instrument." *Salley v. Burns*, 220 Va. 123, 130-31 (1979). Historically, Virginia courts have held that joint wills are valid wills in courts of equity. *See Williams v. Williams*, 123 Va. 643, 646-47 (1918). Both Quenza and L. Baum would be testators if the Warehouse Agreement is construed as a joint will because the second provision refers only to the "surviving partner," which could have been either Quenza or L. Baum, when the Agreement was executed. If both parties are testators, then the only witness to the joint will was the notary. Just as a single testator cannot be an attesting witness to his own will, Va. Code Ann. § 64.1-49 (Michie 2003), it would follow that neither Quenza nor L. Baum could be competent witnesses in their alleged joint will because they are joint testators. Accordingly, the Warehouse Agreement is not a valid will because it does not meet the statutory formalities as required under Virginia law.

Even if the Court were to find that the Warehouse Agreement satisfies the statutory formalities of a will, the Agreement would still fail to qualify as a will because it lacks the requisite testamentary intent. The court in *In re Will of Baker*, 4 Va. Cir. 276, 278 (Frederick County 1985) (Woltz, J.), explains that, "in the absence of testamentary intent, there can be no will." In *Baker*, the decedent signed the alleged holographic will which was to divide property among the named persons in the document. *Id.* at 276. The court held that the document was not a valid will because "there was nothing in the four corners [of the document] referring to the paper as a will or the event of death." *Id.* at 278. *See Poindexter v. Jones*, 200 Va. 372, 375-76 (1958); *In re Estate of Graves*, 19 Va. Cir. 205, 205 (1990). In the present case, the Warehouse Agreement is never characterized as a will; it is referred to as a "Warehouse

Agreement" between business partners. Even though the Warehouse Agreement's second provision took effect upon death, this alone did not make the entire document a will. The first and third provisions clearly were not testamentary because they never referred to death; these provisions became effective upon the signing of the document.

The *Baker* court lists the most generally accepted testamentary purposes as: "positive disposition of property, revocation of some testamentary act previously made, revival of a testamentary paper previously revoked, and appointment of an executor or guardian." *Id.* Although the second provision contains a positive disposition of property at death, this is the only provision in the Warehouse Agreement which contains any evidence of a possible testamentary purpose; most of the document is devoid of any evidence of testamentary intent. The *Baker* court comments that a document can "still be a will or testament provided it be intended by the party to take effect after his death." *Id. at 277* (quoting *Pollock v. Glassell*, 43 Va. (2 Gratt.) 439, 455 (1846)). However, in the present case, most of the Warehouse Agreement was intended to take effect before the death of either party; it was intended to take effect upon the Agreement's signing. Therefore, it appears that the Warehouse Agreement, as a whole, was not intended to be a will due to the lack testamentary provisions in it.

In *Spinks v. Rice,* 187 Va. 730 (1948), the Virginia Supreme Court described the difference between a document that was testamentary in nature and one that was contractual in nature. In *Spinks*, the decedent left a holographic will devising her entire estate. *Id.* at 733. Spinks, the decedent's companion, contested the will, producing a written agreement between him and the decedent. *Id.* at 734. In that agreement, each party bequeathed his or her entire estate to the surviving party.[3] *Id.* The Court stated that it would have upheld that *Spinks* agreement had it been formally executed. *Id.* at 737. However, the *Spinks* agreement consisted only of testamentary provisions and intentions. Unlike the *Spinks* agreement, the Warehouse Agreement dealt with other aspects of the property that related to the business operations of Quenza and L. Baum and which occurred before the death of either partner. The second provision appears to be merely a contractual provision clothed in testamentary language.

---

[3] Spinks and Rice disputed the terms of the agreement, but the Court discussed the case as if the above constituted those terms.

The Warehouse Agreement cannot be construed as a will because it does not meet the statutory formalities of a valid will under Virginia law and because the entire document, on its face, does not reveal any testamentary intent on the part of either Quenza or L. Baum. This Agreement was merely a contract between two partners that included a provision concerning what portion of the business (real property versus merchandise, stock, etc.) each partner would retain upon the death of the other.

### Contract to Make a Will

Quenza next argues that the Warehouse Agreement may be a contract to make a will. A contract to make a will differs from a will in that a:

> [w]ill is in its nature ambulatory until the testator's death, and cannot be made irrevocable, that a person may, by a certain and definite contract, bind himself to dispose of his estate by will in a particular way, and that such a contract, in a proper case, will be specifically enforced in equity.

*Wingold v. Bailey*, 164 Va. 431, 434 (1935). When the Court did not uphold the *Spinks* agreement as a will, Spinks then claimed that the agreement was a contract to make a will. However, the Court explained that the agreement at issue did not reveal any "promise to execute a deed or a will and is not intended as a contract to make a deed or will," for it was simply an "ambulatory, dispository, reciprocal, testamentary undertaking between two people to pass, upon the death of the maker first to die, his or her property to the survivor." *Id.* at 737. Like the agreement in *Spinks*, the Warehouse Agreement in the case *sub judice* contains no language that the parties intended the document to be a contract to make a will.

### Specific Performance

Quenza prays for the remedy of specific performance, and claims that she is entitled to specific performance of the conveyance of the real property as stipulated in the Warehouse Agreement because the real property is "unique and therefore monetary damages will not compensate Quenza."

Real property contracts are historically enforced through the remedy of specific performance due to the particular nature of real property. *Gaynor v.*

*Hird*, 11 Va. App. 588, 592-93 (1991) (citing *Hale v. Wilkinson*, 62 Va. (21 Gratt.) 75 at 80 (1871)). In *Lucy v. Zehmer*, 196 Va. 493, 493 (1954), the plaintiff Lucy sued the defendant Zehmer for specific performance of a contract for a parcel of land. The *Lucy* Court held that specific performance of the land contract was valid where "a contract is in its nature and circumstance unobjectionable, it is as much a matter of course for courts of equity to decree a specific performance of it as it is for a court of law to give damages for breach of it." *Id.* at 504. However, the Court did note that specific performance is a matter of right, "but is addressed to the reasonable and sound discretion of the court." *Id.* See *First Nat'l Exchange Bank v. Roanoke Oil Co.*, 169 Va. 99, 116-17 (1937) (commenting that specific performance of a contract is "never granted unless it is entirely in accordance with equity and good conscience" and it is not "inequitable to a defendant"). If this Court determines that the Warehouse Agreement, in the case at bar, is a valid contract, then specific performance would be a valid remedy.

For these reasons, the Court sustains the demurrer to the Bill of Complaint for specific performance with leave for the Plaintiff to amend the Bill of Complaint to reflect this Court's findings.